## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **AMELIA REYNOLDS** | **Case No.  21-CV-2560** |
| ***On behalf of herself and those similarly situated,*** | |
| **Plaintiff,** | **CLASS ACTION COMPLAINT** <br> **JURY TRIAL DEMANDED** |
| vs. | |
| **CONCORDIA UNIVERSITY, ST. PAUL** | |
| **Defendant.** | |

Plaintiff Amelia Reynolds ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Concordia University, St. Paul ("Concordia" or "Defendant") for breach of contract, unjust enrichment, promissory estoppel, negligent misrepresentation, reckless misrepresentation, and violations of the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.* ("UTPA").

## INTRODUCTION

1.     Plaintiff and class members are students enrolled in Concordia's Accelerated Bachelor of Science in Nursing ("ABSN") program. Concordia advertises its ABSN program as a "rigorous, 16-month curriculum that combines online nursing coursework

1

with hands-on skills simulation labs at [Concordia's] ABSN learning sites and in-hospital clinical rotations."[1]

2.      Upon successful completion of the program, Plaintiff and class members receive a Bachelor of Science in Nursing (BSN) degree (which traditionally takes four years to complete).[2]

3.      Unbeknownst to Plaintiff, Concordia's ABSN program is designed and managed by Orbis Education, LLC, a subsidiary of the publicly traded corporation, Grand Canyon Education, Inc. Orbis has a unique sales pitch: it provides the upfront capital, the academic platforms, the marketing, the enrollment, the course development, and the "student support," and the universities it contracts with, such as Concordia, provide their reputable and established names. Once the program is established, Orbis and the university "share the revenue" so that the university can "profit without paying a dime"[3] and "can reap the rewards without any financial concern."[4] As of August 13, 2021, Orbis had such relationships with at least 21 universities—including Concordia.[5]

4.      Concordia offered this ABSN program to Plaintiff and class members in Oregon and Minnesota. Upon information and belief, the curriculum of the Oregon and Minnesota programs do not materially differ. Plaintiff is a student in Concordia's Oregon ABSN program.

---

[1] https://absn.csp.edu/accelerated-nursing-program/ (last visited Aug. 5, 2021).
[2] *Id.*
[3] https://orbiseducation.com/ (last visited Aug. 13, 2021).
[4] https://orbiseducation.com/our-services/#management (last visited Aug. 13, 2021).
[5] *See* https://orbiseducation.com/partners/ (last visited Aug. 13, 2021).

5.     At all relevant times, Concordia has marketed, advertised, promoted, and otherwise held its ABSN program out to Plaintiff, class members, its students, prospective students, and the public, as an in person and hands on nursing program where simulated lab work and clinical work with actual patients (while under the direction of faculty or professionals) form an integral and essential part of its nursing education program.

6.     According to Concordia, "Experiential learning is essential for creating practice-ready nurses …."[6] Concordia touts its "state-of-the-art nursing skills and simulation labs" and "advanced medical training equipment" that allow students to "safely apply the nursing concepts [they're] learning online in a realistic setting."[7] Similarly, Concordia states that "it is essential" that nursing students "receive actual clinical experience as part of [their] nursing education."[8] For this reason, Concordia represents that it has "teamed up with the area's top health care facilities so [students] receive the best possible real-world patient care experiences, as well as valuable exposure to potential employers."[9]

7.     The uniform representations that Concordia's curriculum included in person and hands on simulated lab and clinical work under the direction of faculty or professionals were further made in Concordia's orientation materials, fee schedules, registration forms, course schedules and syllabus, and student handbooks.

---

[6] https://absn.csp.edu/accelerated-nursing-program/nursing-simulation-labs/ (last visited Aug. 5, 2021).
[7] *Id.*
[8] https://absn.csp.edu/accelerated-nursing-program/hospital-clinical-rotations/ (last visited Aug. 11, 2021).
[9] *Id.*

8.     For such comprehensive training, Plaintiff and the class members paid tuition of at least $15,790 per semester and $ 1,053 per credit hour for full time placement. Plaintiff and class members also paid a variety of fees, including but not limited to technology fees ($200 per semester), health fees ($45 per semester), student fees ($80 per semester), graduation fees ($100 one-time charge), ATI fees ($2,450 one-time charge), course fees (approximately $120 for each course with a lab), and malpractice insurance for interacting with patients in medical settings ($38 per year).

9.     In the wake of COVID-19, Concordia drastically altered the curriculum that had been offered by Concordia and accepted by Plaintiff and the class. This drastic alteration resulted in the elimination of all in-person and hands on training in the on-campus simulation and skills labs. Instead, all coursework was moved exclusively to off-campus online learning environments for students enrolled in the Spring of 2020. This modification also eliminated all hospital clinical placement or field experience classes. Instead, the course work was moved exclusively to off-campus online learning. The modification of the curriculum resulted in every Concordia ABSN student losing access to the simulations and hands on clinical experiences that were part of the contract for educational services during the effected semesters. The associated lab fees of $120 per class and pro-rata tuition cost for the clinical courses were not reimbursed despite the unavailability of the simulation labs, skills labs, and clinical work.

10.    The curriculum modification has continued to the present semester, with limited lab availability and limited clinical placements, resulting in the entire student enrollment receiving no, or fewer, in-person simulated lab and actual clinical experiences

4

that were promised in exchange for the tuition and fees. In some classes students have been given independent study assignments that do not involve hands on training under the direction of faculty or professionals in real or simulated medical environments. For example, Plaintiff was forced to practice hanging IV fluids at home by herself on coat hangers.

11.     In the Spring and Summer 2021 Semesters, Concordia resumed in-person skills labs (although at first on a limited basis). However, with limited exceptions, Concordia did not resume in-person simulations in Concordia's "state of the art" simulation labs. The associated lab fees of $120 per class were not reimbursed despite the unavailability of the simulation labs.

12.     Concordia also continued to apply a modified clinical curriculum that was not offered for the same amount of clinical time and was not available to all enrolled students.

13.     Given its inability to provide clinical experiences to every student enrolled in a clinical course, and departure from its promised curriculum, Concordia opted to implement a secret lottery to assign in-person clinical placements to a lucky but limited group of students. This secret lottery system was not explained to Plaintiff or class members prior to enrolling in the ABSN program. Plaintiff understood from the handbook and registration forms, as well as marketing materials, that clinical work was an integral part of the ASBN program.

14.     The lottery process resulted in hundreds of students enrolled in clinical courses receiving no clinical education or reduced hours of experience and instruction. In

its place, Concordia again instituted a drastic departure from the curriculum and developed an independent studies requirement. This independent studies requirement did not include hospital clinical placements or actual hands-on clinical experience under the direction of faculty or professionals. The limited nature of the clinical placement program or independent studies, as a replacement for clinical training and experience, was not disclosed prior to students enrolling in the program or the specific clinical courses.

15.     Moreover, despite drastically altering their curriculum due to COVID-19, Concordia did not disclose to Plaintiff or class members prior to their enrollment in the subsequent semesters that the modifications would continue indefinitely and prevent them from attending simulated labs and being placed in clinical field experiences. Rather, Concordia continued to promise to existing and new students that hands-on clinical, simulation, and skills lab training were core components of its ABSN program that would be offered in each semester. Concordia did not disclose the clinical placements and simulated lab work were limited and not available for all students.

16.     Indeed, despite not offering the simulated labs and clinical course experiences to all students, Concordia continues to market for new students promoting its "lab" and "real world patient care experiences." The current students remain uninformed as to whether clinicals and labs will resume in the coming semesters.

17.     Despite failing to provide the important onsite and hands on clinical curriculum that Plaintiff and class members were promised, Concordia did not reduce its tuition or offer pro rata refunds to students for the clinical course work that was not provided.

18.     Plaintiff is sympathetic to the challenges presented by the COVID-19 pandemic. However, Plaintiff and the class members bargained and paid for specific lab simulation and in-person clinical nursing training that they have not—and will not—receive. The promise of in-person, hands-on clinical training to ABSN students was explicit to and/or implied and incorporated into the contract between the Plaintiff and class members and Concordia.

19.     Plaintiff and the class members applied to and later re-enrolled in Concordia's ABSN program with the expectation that they would receive the in-person state of art lab learning, and hands-on clinical nursing training under the guidance of faculty or professionals that was promised to them by Concordia in exchange for the tuition and fees.

20.     Plaintiff does not bring this action suggesting that a difference of opinion related to pedagogy is at stake. And Plaintiff does not allege that Concordia fell below any educational standard of care. Rather, Plaintiff brings this action for breach of contract damages because Concordia failed to provide Plaintiff and class members the clinical, simulated, and field experiences that Concordia promised as part of its program and specific course work. And Concordia has continued to market and offer a nursing program focused on clinical in-person education in real world medical settings, and simulated training in its on-campus labs, that it could not ultimately provide to the students who paid for such training.

21.     Plaintiff also brings this action for Concordia's misrepresentations and failure to disclose that it could not and would not be offering the lab and clinical services

7

that were offered and provided in previous semesters. Concordia further failed to disclose to current and prospective students the existence of a lottery system that would determine the clinical placement.

22. Concordia's actions have financially damaged Plaintiff and the class members, many of whom borrowed money to attend labs and clinical classwork that Concordia failed to and continues to fail to provide. Plaintiff brings this action because Plaintiff and the class members did not receive the full value of the services offered and paid for. Specifically, Plaintiff and the class did not receive any clinical experience or the full number of clinical experience hours that were promised. The students were also not provided the skills lab training that was promised to the students prior to enrollment in the program and each semester. Finally, Concordia is being unjustly enriched by students who have paid Concordia money that equity demands, and potentially saved money and profited by the elimination of on campus training and clinical placements. The funds paid for the on-campus learning, clinical placements and any profits from the cancellation and modification of the program should rightfully belong to Plaintiff and the class members. Plaintiff and the class members have lost the benefit of their bargain and/or suffered out-of-pocket loss.

**JURISDICTION AND VENUE**

23. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class is a citizen of a different state than Defendant, there are

more than 100 members of the Class, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

24.     This Court has personal jurisdiction over Concordia because Concordia's principal place of business is in the State of Minnesota and it is incorporated in the State of Minnesota as a non-profit corporation.

25.     Venue is appropriate because Concordia's principal place of business is in St. Paul, Minnesota.

## **THE PARTIES**

### *Defendant Concordia University*

26.     Defendant Concordia University, St. Paul is a private university incorporated as a non-profit corporation in the State of Minnesota. Its headquarters and principal place of business are in St. Paul, Minnesota. Concordia's ABSN program is offered to students in St. Paul, Minnesota and Portland, Oregon.

### *Plaintiff Amelia Reynolds*

27.     Plaintiff Amelia Reynolds is a resident of the State of Oregon. She is enrolled as a student at Concordia University, St. Paul in its Portland, Oregon ABSN program.

28.     Plaintiff Reynolds enrolled in Concordia University's ABSN program starting in its Fall 2020 Semester. She applied for, accepted enrollment in the ABSN program, and paid tuition and fees with the explicit understanding that during each semester, she would be provided: (1) in-person clinical training in real world medical environments and (2) in-person training in Concordia's simulation and skills labs. This was based on her review of Concordia's website, orientation materials, registration form, course

9

schedules and syllabus, communications from Concordia's agents, and the student handbook—all of which included explicit references to lab and clinical in-person, hands on training she expected to receive.

29.     But for the hands-on lab and clinical hospital and field learning experience promised by Concordia, Plaintiff would not have enrolled in Concordia's ABSN program.

30.     On July 7, 2020, Plaintiff enrolled in and registered for the ABSN program. The registration included her enrollment in the fall semester of 2020. Concordia offered her placement in and she registered for NUP 350 "Fundamentals of Nursing and Caring for Persons with Chronic Conditions." The Fall 2020 Registration Form (attached as **Exhibit 1**) indicates that the course is an 8-credit hour course that includes labs and clinical. The Summer 2020 Student Handbook (attached as **Exhibit 2**) further indicates that NUP 350 includes both clinical and labs. And the syllabus for NUP 350 (attached as **Exhibit 3**) indicates that it is an 8-credit hour course split between 4 (theory) and 4 (clinical). The syllabus further states that "the clinical portion covers 135.75 hours (beyond the didactic hours) including skills lab, simulation, and clinical experience." *Id.* at 5.

31.     The Accelerated BSN Portland 2020 Fee Schedule (attached as **Exhibit 4**) shows that NUP 350 includes a $120 lab fee.

32.     During the fall semester and during completion of NUP 350, Plaintiff, however, did not receive any in-person simulations or in-person clinical experiences in any medical settings under the direction of faculty or professionals. Although she received a handful of in-person skills labs, she received less than originally promised.

33.     This deficiency in the clinical experience continued to the Spring Semester in 2021, where Plaintiff's registration included enrollment in NUP 353 "Nursing Role in the Acute Care Setting." The syllabus (attached as **Exhibit 5**) states that NUP 353 is an 8 credit course split between 4 didactic credits and 4 clinical credits. "For each credit, the course syllabus must account for 45 hours of 'learning time.'" *Id.* at 11. The syllabus also states that "Clinical Hours Attendance/Professionalism" will include 81 hours (72 clinical hours and 9 simulation hours). *Id.* at 9.

34.     During the Spring 2021 Semester, Plaintiff did not have access to the simulation labs. In addition, although she was scheduled to receive 6 in-person clinical sessions in a clinical rehabilitation setting, she only received 3 sessions totaling approximately 24 hours of clinical experience, rather than the 72 hours that were promised.

35.     Her professor explained this in an April 5, 2021 email by stating that "[i]n the interest of providing equity among student groups, [Concordia] has made the decision to provide all students with 3 agency-based clinical learning opportunities." In other words, because placements could not be evenly distributed amongst students, Concordia reduced the clinical experiences provided to Plaintiff and her fellow classmates.

36.     For the Summer Semester, 2021, Plaintiff registered for NUP 410 "Nursing Care of Children and the Childbearing Family." The Summer 2021 Student Handbook (attached as **Exhibit 6**) states that NUP 410 is a 7-credit hour class split between 4 theory and 3 clinical. *Id.* at 57. According to the syllabus for NUP 410 (attached as **Exhibit 7**), "The course is designed to have learning opportunities and activities totaling approximately

245 hours over the 15 weeks of the course." *Id.* at 5. The syllabus estimated that 120 hours would be clinical hours. *Id.*

37.     During the Summer 2021 Semester, however, Plaintiff did not receive any in-person clinical classes or experiences in real world medical settings under the direction of faculty or professionals for NUP 410.

38.     For the Summer Semester, 2021, Plaintiff also registered for NUP 411 "Nursing in the Community." According to the student handbook, NUP 411 is also a 7-credit hour class split between 4 theory and 3 clinical. **Exhibit 6** at 57. According to the syllabus (attached as **Exhibit 8**), NUP 411 is designed to have learning "opportunities and activities totaling approximately 175 hours over the 15 weeks of the course." *Id.* at 5. The Syllabus estimated that 25 hours would be clinical hours. *Id.* at page 6.

39.     Although Plaintiff received a clinical placement for NUP 411, it was in a non-medical setting, and she received less hours of training than were promised.

40.     Overall, despite paying full tuition and fees but not receiving a refund, in Plaintiff's first three semesters, she was not provided hundreds of hours of in-person learning experience in simulated or clinical settings that she paid to receive, including but not limited to:

| Semester | Course | Clinical Hours Promised | Clinical Hours Provided | Deficiency | # of Credit Hours Affected |
|---|---|---|---|---|---|
| Fall 2020 | NUP 350 | 137.5 | 0 | 137.5 | 4 |
| Spring 2021 | NUP 353 | 72 | 24 | 48 | 4 |
| Summer 2021 | NUP 410 | 120 | 0 | 120 | 3 |

41.     Upon information and belief, each member of the putative class paid full tuition, did not receive a refund, and was not provided the full hours of hands on clinical or simulated learning experience that was promised.

## FACTUAL ALLEGATIONS

42.     Concordia's ABSN program is an accelerated program comprised of 59 or 60 credit hours[10] over four consecutive, full-time semesters. This means that the entire program is completed in 16 months. Once the program is completed, ABSN students receive a bachelor's degree in nursing (BSN), something that typically takes four years to achieve.

43.     The accelerated timeline for earning the degree is possible because Concordia's ABSN program is reserved for students who previously satisfied non-nursing college level prerequisites. This allows Concordia to offer ABSN students an accelerated learning experience focused solely on nursing. The accelerated timeline is what attracts many students to the program. It is also what keeps many students in the program who might otherwise depart; the rapid pace of the studies and the amount of money committed through just one or two semesters is so substantial that students are not able to simply stop their studies in the ABSN program and transfer to another program.

44.     Concordia's ABSN program is very expensive. For example, ABSN students who started the program during the Fall 2020 Semester are anticipated to spend a total of $72,416.19 in tuition and fees over the course of the four-semester program. **Exhibit 4**

---

[10] When Plaintiff started the program in the Fall 2020 Semester, the entire program was intended to be 59 credits. It has since changed to 60 credits.

(Accelerated BSN Portland 2020 Fee Schedule). The specific fees and tuition were broken down in this itemized statement and provided to Plaintiff when she enrolled in the ABSN program.

***ABSN Program is Broken into Three Components***

45. Concordia represents its ABSN coursework as being divided into three components: online didactic classes, onsite simulation and skills labs, and clinical placements in real healthcare settings under the direction of faculty or professionals. The curriculum is designed to be completed in a specific order so that students may properly progress from basic to advanced concepts. For example, the Summer 2020 Student Handbook states that "Nursing students will progress through nursing courses in sequential order and must pass each course before progressing to the next." **Exhibit 2** at 10.

46. The online coursework is one of three key components of the program. It is designed to teach the fundamentals and theories of the profession to help set the foundation for the nursing education.

47. The other two components are (1) interactive, in-person clinicals in real world medical settings under the direction of faculty or professionals, and (2) interactive, in-person simulations and skills labs under the direction of faculty or professionals.

48. Concordia bills its in-person, "onsite curriculum" as vital to the success of its ABSN program. For example, the Summer 2020 Student Handbook states that "Clinical hours must be completed within the semester when the clinical course is offered and in the specific nursing Track course sequence. If clinical/simulation hours are not completed successfully, the student will fail the course and will be required to complete the entire

14

course, on a space available basis, when it is next offered within the curriculum." **Exhibit 2** at 26-27.

49.     Offered in carefully planned conjunction with academic coursework, the onsite curriculum is promised to provide students experiences that would otherwise be taught only through textbooks and lectures. Without it, regardless of the quality of education actually received, nursing students are forced to enter real medical practice without any prior real experience or patient interaction. This is not what they bargained for when enrolling and re-enrolling in Concordia's ABSN program.

50.     ABSN students take different classes in each of their four semesters. However, each semester is intended to include a set number of credit hours through in-person, hands-on learning through simulation labs and/or clinical experience.

51.     Prior to starting the ABSN program, Plaintiff and class members were provided with a detailed curriculum mapping out the schedule that would be followed throughout the entirety of the program. The schedule breaks down the specific expected learning experiences in each course (i.e., didactic, lab, or clinical). Plaintiff and class members were required to review and sign this document as a condition of enrollment. The registration form received by Plaintiff (**Exhibit 1**) is depicted below:

| Start Date | CRN | Course | Course | Credits | Modality | Degree Area |
|---|---|---|---|---|---|---|
| *Example: Spring 2021* | *20356* | *ACC 201* | *4* | *4* | *Online* | *Accounting* |
| Fall 2020 | TBD | NUP 350 | Fundamentals of Nursing and Caring for Persons with Chronic Conditions | 8 | Didactic, Lab, Clinical | ABSN |
| Fall 2020 | TBD | NUP 351 | Integration of Pathophysiology and Pharmacology | 4 | Didactic | ABSN |
| Fall 2020 | TBD | NUP 352 | Introduction to Nursing Informatics and Information Literacy | 2 | Didactic | ABSN |
| Spring 2021 | TBD | NUP 353 | Care of the Adult with Acute Physical Illness | 8 | Didactic, Lab, Clinical | ABSN |
| Spring 2021 | TBD | NUP 354 | Integration of Pathophysiology and Pharmacology II | 4 | Didactic | ABSN |
| Spring 2021 | TBD | NUP 355 | Nursing Care of Clients with Mental & Behavioral Health Issues | 3 | Didactic | ABSN |
| Summer 2021 | TBD | NUP 403 | Nursing Research and Evidence-Based Practice | 2 | Didactic | ABSN |
| Summer 2021 | TBD | NUP 410 | Nursing Care of Children and the Childbearing Family | 7 | Didactic, Clinical | ABSN |
| Summer 2021 | TBD | NUP 411 | Nursing in the Community | 7 | Didactic, Clinical | ABSN |
| Fall 2021 | TBD | NUP 412 | Nursing Leadership and Health Care Policy | 3 | Didactic | ABSN |
| Fall 2021 | TBD | NUP 413 | Complex Clinical Nursing Care Capstone | 8 | Didactic, Clinical | ABSN |
| Fall 2021 | TBD | NUP 414 | Spiritual Caring and Ethics in Nursing Practice | 3 | Didactic | ABSN |

Student Signature _____

Date _July 7th 2020_____

52.　　According to a document titled "Fall 2020 ABSN Curriculum in Portland," which was provided to Plaintiff in the Summer of 2020 during a "Fall 2020 Virtual Event," the "16-month accelerated nursing program in Portland requires you to complete 59 credit hours of online didactic coursework, hands-on learning at [Concordia's] high-tech nursing site and clinical practice at top local health care facilities." **Exhibit 9** (packet of information provided during the Fall 2020 Virtual Event), at 2.

53.　　The document titled "Fall 2020 ABSN Curriculum in Portland" further states that "Because [Concordia's] ABSN curriculum includes comprehensive online

16

coursework, hands-on preparation, and real-world application, you can expect to graduate with a strong academic foundation along with the clinical preparedness needed to take the National Council Licensure Exam (NCLEX)." *Id.* The document also states that "clinical rotations prepare you to learn to care for the whole patient …." *Id.*

54.     YouTube videos posted by Concordia also stress the importance of the hands-on learning experience promised to ABSN students. Examples of Concordia's statements include, but are not limited to:

a.   "Both of our ABSN learning sites allow you to practice what you're learning online in an authentic clinical setting."[11]

b.   "In skills lab, you'll practice hands on nursing skills, such as checking vital signs, inserting IVs, and tracheotomy care."[12]

c.   "CSP faculty will be there to supervise and guide you as you hone these practical skills."[13]

d.   "As you treat a mannequin, your instructor will control its symptoms and responses from behind the scenes."[14]

e.   "Skills and simulation labs are key components of your accelerated nursing education at CSP."[15]

---

[11] https://www.youtube.com/watch?v=Yg4BNDIQNrM (published June 16, 2021) (last visited Aug. 11, 2021).
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

***Onsite Skills and Simulations Labs***

55.     According to a blog post published by Concordia on December 9, 2020, "At ABSN at Concordia, you will enjoy hands-on learning through our state-of-the-art nursing simulation and skills labs at one of our two ABSN learning sites in Portland, or at our dedicated site in St. Paul. These labs mimic real-world healthcare facilities and provide a safe environment in which to hone your skills and knowledge. In skills lab you'll learn how to conduct head-to-toe nursing assessments, insert IVs and catheters, care for wounds and more. You will practice on medical manikins so you can learn from your mistakes without putting patients at risk."[16]

56.     According to the same blog post, "In simulation (sim) lab, you will sharpen your decision-making skills in various mock healthcare scenarios featuring medical manikins that not only blink and breathe, but also exhibit various symptoms. Instructors guide the manikins behind the scenes while you respond in real time."[17]

57.     The blog post also contains a quote from a purported ABSN alumna, stating "Skills and simulation labs help prepare you for clinical experiences in that you have the opportunity to make mistakes and practice the hands-on skills ahead of time to build up your confidence."[18]

---

[16] https://absn.csp.edu/blog/what-to-expect-from-absn-program/ (last visited 6/14/2021).
[17] *Id.*
[18] *Id.*

58.     At all times relevant, Concordia has also maintained a portion of its website dedicated to providing information about hands-on simulation and skills labs. This webpage states, in part:

> Experiential learning is essential for creating practice-ready nurses, and [Concordia's] state-of-the-art nursing skills and simulation labs provide just that. Featuring advanced medical training equipment, these labs allow you to safely apply the nursing concepts you're learning online in a realistic setting.
>
> There, you will work alongside your instructors to gain hands-on nursing skills practice using two types of high-tech medical manikins: a task trainer for learning skills such as inserting IVs and conducting basic wound care, and a high-fidelity human patient simulator that can realistically simulate a wide variety of bodily functions and medical conditions. Controlled by your clinical instructors, these manikins can even react to treatments and medications.[19]

59.     Simulations also serve the important purpose of training students before they are exposed to real patients and medical professionals during clinicals (when mistakes can have severe consequences). For example, Concordia's website states:

> [N]ursing skill and simulation labs help you develop critical-thinking, problem-solving and decision-making skills in a controlled, risk free environment. This means you are able to correct mistakes without putting anyone in danger. As a result, you can begin your clinical rotations feeling prepared to work alongside actual RNs and provide patient care.[20]

60.     Such representations, copied in more detail below, formed the basis for Plaintiff's and other class members' understanding of what Concordia offered for nursing simulation and skills laboratories:[21]

---

[19] https://absn.csp.edu/accelerated-nursing-program/nursing-simulation-labs/ (last visited 6/14/2021).
[20] *Id.*
[21] *Id.*

## ON-CAMPUS NURSING SKILLS AND SIMULATION LABS

Experiential learning is essential for creating practice-ready nurses, and our state-of-the-art nursing skills and simulation labs provide just that. Featuring advanced medical training equipment, these labs allow you to safely apply the nursing concepts you're learning online in a realistic setting.



There, you will work alongside your instructors to gain hands-on nursing skills practice using two types of high-tech medical manikins: a task trainer for learning skills such as inserting IVs and conducting basic wound care, and a high-fidelity human patient simulator that can realistically simulate a wide variety of bodily functions and medical conditions. Controlled by your clinical instructors, these manikins can even react to treatments and medications.

Our nursing skills and simulation labs help you develop critical-thinking, problem-solving and decision-making skills in a controlled, risk-free environment. This means that you are able to make and correct mistakes without putting anyone in danger. As a result, you can begin your clinical rotations feeling prepared to work alongside actual RNs and provide patient care.

## NURSING SIMULATION LABS PROVIDE A DOSE OF REALITY

Our nursing simulation labs get you as close as possible to genuine patient-care situations, affording you the skills and confidence necessary to succeed during your clinical rotations.

ABSN skills and simulation labs at Concordia University allow you to:

- Participate in hands-on learning strategies that are similar to clinical experiences.
- Apply basic skills such as checking vital signs and monitoring blood pressure.
- Practice responding to acute and critical events in a controlled, safe environment.
- Evaluate various patient-care scenarios and administer proper treatment.
- Learn from mistakes and effectively correct them with the supervision of faculty.
- Experience situations that focus on teamwork and collaborative care.

*In-Person Clinical Experience*

61.     On-site clinicals similarly play a crucial role in Concordia's ABSN curriculum as they provide the only opportunity for students to interact with real patients and medical professionals in a healthcare setting prior to entering the medical field. For example, Concordia's website states that "Unlike with many professions — where you don't get real-life work experience until starting your first job — it is essential that you receive actual clinical experience as part of your nursing education."[22]

62.     The importance of clinicals is demonstrated by the Summer 2020 Handbook, which states that "Missing two days of clinical will result in a grade of F for the course." **Exhibit 2** at 27.

63.     Concordia represents that it has teamed up with top local healthcare facilities so that students can receive interactive, in-person clinical training under the guidance of faculty or professionals. For example, Concordia states, "For your Accelerated BSN clinical rotations, we have teamed up with the area's top health care facilities so you receive the best possible real-world patient-care experiences, as well as valuable exposure to potential employers."[23]

64.     Similarly, a blog post published by Concordia states that "Students complete clinical rotations at various healthcare facilities in and around Portland or St. Paul. During this hands-on portion of our program, students experience a variety of practice areas,

---

[22] https://absn.csp.edu/accelerated-nursing-program/hospital-clinical-rotations/ (last visited 6/14/2021).
[23] *Id.*

including mental health, intensive care, oncology, pediatrics and more. First, students shadow other nurses. Eventually, they perform patient care under supervision."[24]

65.    Such representations, copied in more detail below, formed the basis for Plaintiff's and other class members' understanding of what Concordia offered for nursing simulation and skills laboratories:[25]

## ACCELERATED BSN CLINICALS AT LOCAL HEALTH CARE FACILITIES

Unlike with many professions — where you don't get real-life work experience until starting your first job — it is essential that you receive actual clinical experience as part of your nursing education. For your Accelerated BSN clinical rotations, we have teamed up with the area's top health care facilities so you receive the best possible real-world patient-care experiences, as well as valuable exposure to potential employers.



With a wealth of clinical placement hours at a variety of health care providers, you'll graduate from our 16-month Accelerated Bachelor of Science in Nursing ready for a life-changing and emotionally rewarding career. You'll also finish our ABSN ready to sit for the National Council Licensure Examination (NCLEX-RN®) — the nationwide exam all nursing graduates must pass in order to practice as a licensed, registered nurse.

To ensure you gain this diverse, real-world nursing experience over such an accelerated time frame, you'll begin attending clinical placements your very first semester. Don't worry, though, you won't start providing advanced care until later in the curriculum.

---

[24] https://absn.csp.edu/blog/what-to-expect-from-absn-program/ (last visited 6/14/2021).
[25] https://absn.csp.edu/accelerated-nursing-program/hospital-clinical-rotations/ (last visited 6/14/2021).

## REAL-WORLD NURSING EXPERIENCES THAT ALIGN WITH YOUR COURSEWORK

Clinicals, like skills and simulation labs, provide countless opportunities to put the nursing theory lessons of your online coursework into practice. Only with clinical rotations, the patients aren't high-tech medical manikins but real people.

Still, that doesn't mean you'll be inserting IVs or evaluating patients' responses to intensive care interventions right from the get-go. At first, you'll play more of an observational role emphasizing the documentation of care and skills needed to maintain and promote health within adult and geriatric populations. Other skills you'll focus on at the beginning of your nursing clinical experience include safe patient-handling practices and assisting patients with activities of daily living (ADLs).

As the content of your online coursework becomes more complex, so too will your clinical experiences. Later in our accelerated BSN, you'll find yourself taking on additional responsibilities and a more direct role with patients.



***Concordia Stops Offering On-Site Education***

66.     In the wake of COVID-19, Concordia drastically altered its course offerings. Upon information and belief, during the Spring 2020 Semester, Concordia completely eliminated in-person learning. Instead, simulations, skills labs, and clinicals were moved online, or students were given independent study assignments that did not involve real or simulated healthcare environments.

67.     In response to COVID-19, Concordia was **not** required to suspend clinical placements for its ABSN students. Indeed, the Minnesota Board of Nursing requires, pursuant to Minn. R. 6301.2340,that professional nursing education programs "provide

23

adequate *** clinical and technical learning resources ***  The rule further requires that a "nursing education program must" ensure that students of professional programs "have learning activities with faculty oversight to acquire and demonstrate competence in clinical settings with patients across the life span and with patients throughout the whole wellness, acute and chronic illness continuum." And that the students "have diverse learning activities including clinical simulations to acquire and demonstrate competence."[26] Nothing related to COVID changed these requirements.

68.     Prior to the Fall 2020 Semester, Plaintiff and the class members were each provided with a copy of the Summer 2020 Student Handbook (**Exhibit 2**), which was last revised May 1, 2020. Concordia required Plaintiff and class members to read and sign this handbook as a condition of enrollment.

69.     Plaintiff and the class members agreed to the terms in the handbook.

70.     The Summer 2020 Concordia Nursing Student Handbook states:

    a.  "The hybrid Accelerated BSN program follows a blended learning model comprising online nursing theory coursework, hands-on experiential learning in our nursing simulation labs in Portland and real-world clinical practice in local health care facilities." *Id.* at 9.

    b.  "Lab learning and simulation experiences provide nursing students with learning opportunities which complement didactic learning in the development of critical thinking." *Id.* at 35.

    c.  "Open lab time for supervised practice will be scheduled on an 'as needed' basis." *Id.*

    d.  "Students will be required to attend clinical at multiple sites and are required to have reliable transportation. CSP aims to obtain clinical opportunities within 60 miles from the respective CSP campus, but

---

[26] https://mn.gov/boards/assets/Choosing_a_Nursing_Prgm_2-2021_tcm21-469906.pdf#False (last visited 9/16/21)

occasionally we must use clinical sites further away due to limited availability. Clinical hours may occur during any shift—days, evenings, or nights—and any days of the week, including weekends, depending on clinical availability and student assignment." *Id.* at 43.

e.  "Students may not practice independently, regardless of any other roles or credentials the student may have while performing as a nursing student in the Track. Students are supervised by CSP nursing faculty or designee at all times while in the Track." ability and student assignment." *Id.* at 44.

71.  Despite the clear statements in the handbook, during the Fall 2020 semester:

a.  There was no "hands-on experiential learning" in Concordia's "nursing simulation labs" or "real-world clinical practice in local health care facilities."

b.  There were no "simulation experiences," and limited skills lab learning.

c.  There was no "[o]pen lab time for supervised practice …."

d.  Plaintiff and class members were not able to "attend clinical at multiple sites …."

e.  Contrary to the handbook, Plaintiff and the class members were actually required to satisfy some clinical credits through independent study without supervision or assistance from Concordia.

72.  Moreover, the Summer 2020 Handbook breaks down the specific intended in-person learning opportunities by course. For example, the following courses were designed to include in-person clinical learning for Concordia's Oregon ABSN students:

a.  NUR 350 ("This course has a clinical component.");

b.  NUR 353 ("This course has a clinical component.");

c.  NUR 410 ("on-campus clinical (lab) that includes pediatric and obstetric assessment and nursing procedures, and in clinical practice in varied healthcare settings.");

    d.  NUR 411 ("Course includes accompanying clinical component."); and

    e.  NUR 413 ("Students will be immersed in the professional practice role during an accompanying 200-hour preceptored clinical component.").

73.    The statements about clinical learning are reiterated in a document titled "Fall 2020 ABSN Curriculum," which was provided to Plaintiff in the Summer of 2020 during a "Fall 2020 Virtual Event." *See* **Exhibit 9**. For example, this document states that "*Courses with an asterisk (\*) include on-site clinical component.*" (emphasis in original). *Id.* at 3. It then lists the following courses with an asterisk next to the course number: NUR 350, NUR 353, NUR 410, NUR 411, NUR 413. *Id.*

74.    During and after the Fall 2020 Semester, Concordia continued to misrepresent the education it provided. For example, Concordia published a blog post on December 9, 2020, stating that "The [Concordia] ABSN program is hybrid — comprised of hands-on labs and clinical experience in addition to online coursework."[27]

*75.*    Acknowledging the pandemic, the blog post states, "You might be wondering what measures CSP has taken to ensure the safety of its faculty and students, in light of the recent pandemic. For the fall 2020 semester, students and faculty resumed skills labs and clinical simulations, but at 50% of typical frequency."[28] Upon information and belief, this is a misrepresentation because Plaintiff and class members were not provided *any* in-person simulations or clinicals. They also received less in-person labs than promised. But even

---

[27] https://absn.csp.edu/blog/what-to-expect-from-absn-program/ (last visited 6/14/2021).
[28] *Id.*

taking Concordia's statement as true, Plaintiff and class members would have received only 50% of the services they bargained for.

***Concordia Resumes Limited On-Site Activities***

76.     During the Spring and Summer 2021 Semesters, Concordia secured clinical opportunities—albeit often outside of healthcare settings (*e.g.*, nursing homes and retirement communities)—for a limited number of students. Given the limited availability of these placements, Concordia implemented a secret lottery for assigning clinicals (which was not explained to students until late in the Summer 2021 Semester). A May 28, 2021 email from the Concordia ABSN program Director, Dr. Hollie Caldwell, to Plaintiff and class members states, in part:

> "I would like to acknowledge the anxiety and difficulty that the recent delays in clinical have caused…. I owe third semester students an apology. We received 58 acute care placements for OB/peds for 139 students. We instituted a lottery process to ensure students were placed using probability only…. What we did not do was communicate this process to our third semester students prior to taking action. In talking with some of you, I realize this was an error…. [S]ome of you have expressed that knowing this ahead of time would have helped you manage your own expectations about cute [sic] care clinical learning opportunites [sic] for this course. I'm sorry about this. It was not our intent to create more anxiety, confusion or frustration for you.
> …
> I will try not to make the same mistake twice!:) [sic]

77.     During the Summer 2021 Semester, some students received in-person simulations, but this was only if they did not win the "lottery" to receive in-person clinical experiences.

78.     The Summer 2021 Handbook (**Exhibit 6**), last revised May 17, 2021, makes the same or similar representations about in-person learning as the Summer 2020 Handbook:

>   a. "The hybrid Accelerated BSN program follows a blended learning model comprising online nursing theory coursework, hands-on experiential learning in our nursing simulation labs in Portland and real-world clinical practice in local health care facilities." *Id.* at 9-10.
>
>   b. "Skills lab learning and simulation experiences provide nursing students with learning opportunities which complement didactic learning in the development of critical thinking." *Id.* at 32.
>
>   c. "Open skills lab time for supervised practice may be provided as the schedule allows." *Id.*
>
>   d. "Students will be required to attend clinical at multiple sites and are required to have reliable transportation. CSP aims to obtain clinical opportunities within 110 miles from the respective CSP campus, but occasionally we must use clinical sites further away due to limited availability." *Id.* at 41.
>
>   e. "Students are supervised by CSP nursing faculty or designee at all times while in the Track." *Id.*

79.     Moreover, the Summer 2021 Handbook breaks down some of the specific intended in-person learning opportunities by course. For example, according to the handbook, starting in the Spring 2021 Semester, the following courses were designed to include in-person clinical learning and simulation and skills lab components for Concordia's Oregon ABSN students:

>   a. NUR 378 ("1 credit lab");
>
>   b. NUR 380 ("1 credits lab, and 2 credit clinical …. In the lab, students apply the skills learned in the theory component of this course…. This course includes clinical experience and simulation.");

c.  NUR 382 ("1 credit lab …. The use of technology and skills lab enable the student to synthesize and apply the knowledge of assessment and health promotion to the care of patients. This course includes … skills lab.");

d.  NUR 384 ("1 credit clinical …. This course includes … clinical experiences, and simulation.");

e.  NUR 388 ("2 credit clinical …. The course includes a clinical experience …. This course includes … clinical experiences, and simulation."

f.  NUR 390 ("1 credit lab, 2 credits clinical …. This course includes … clinical experiences, simulation, and skills lab.");

g.  NUR 417 ("1 credits lab, and 2 credits clinical …. Students will synthesize data and prioritize care for multiple, complex adult patients …. This course includes … clinical experiences, simulation, and a skills lab.");

h.  NUR 418 ("1 credit lab, 1 credit clinical …. Evidence based practice in maternity, newborn and pediatric care is examined in … on-campus clinical (lab) that includes pediatric and obstetric and nursing procedures, and in clinical practice in varied healthcare settings.");

i.  NUR 419 ("1 credit clinical");

j.  NUR 424 ("5 credits clinical …. "Students complete an internship experience focused on transition to practice …. This course includes … clinical experience."); and

k.  NUR 428 ("1 creditclinical [sic]").

80.  Plaintiff and class members were similarly required to review and sign the 2021 Summer Handbook before re-enrolling for the Summer 2021 Semester.

81.  Despite no longer providing important hands-on learning experiences, Concordia charged full tuition to ABSN students.

82.  Concordia also has not refunded students for any of its exorbitant fees. For example, according to the cost breakdown provided to Plaintiff Reynolds ahead of the Fall

2020 Semester, Concordia charges an "ABSN Portland Course Fee" of "approx. $120 within each course with a lab." **Exhibit 4** at 2. According to the document that the cost breakdown was attached to, which is titled "Accelerated BSN Portland Fees," the "ABSN Portland Course Fee … supports consumables and resources within courses and throughout the program (labs, simulations)." *Id.* at 1. It was unjust for Concordia to retain the proceeds from these fees despite no longer needing the same amount of "consumables and resources" for labs and simulations, which were moved online (especially in light of the fact that Plaintiff and class members were charged a separate "ABSN Portland Technology Fee"). As a result, of Concordia's failure to provide the resources Plaintiff and class members paid for, students were forced to use their own resources. For example, Plaintiff was forced to practice hanging IV fluids on coat hangers.

83.    Without the hands-on learning experience promised through Concordia's ABSN program, the remote learning provided to students loses value because students cannot conceptualize what they have learned through real life practice. As clearly set out by Concordia, each of the three components to the ABSN education—online theory, onsite practice, and onsite clinicals—are taught from basic to advanced in conjunction with the other two. Advanced theory provides little education without advanced hands-on experience. But that incrementally advancing hands-on experience is exactly where Concordia is failing. As a result, Plaintiff and the class members, unable to engage in the hands-on learning at the core of Concordia's ABSN program, have each lost more than a semester of their promised studies, in both time and in the money they paid for tuition and other fees.

## CLASS ALLEGATIONS

84.     Under Rule 23(b)(1)(A), (b)(2), and (b)(3), Plaintiff brings this action on behalf of herself and the Class, initially defined as follows:

> **All individuals enrolled as a student in Concordia University, St. Paul's Accelerated Bachelor of Science in Nursing Program who paid tuition and fees to Concordia during the Relevant Time Period.**

85.     The "Relevant Time Period" is the largest period allowed by law.

86.     Plaintiff also brings this action on behalf of herself and the Subclass, initially defined as follows:

> **All individuals enrolled as a student in Concordia University, St. Paul's Portland, Oregon Accelerated Bachelor of Science in Nursing Program who paid tuition and fees to Concordia during the Relevant Time Period.**

87.     The "Relevant Time Period" is the largest period allowed by law.

88.     Where appropriate, the Class and Subclass are referred to collectively as the "Class."

89.     Plaintiff reserves the right to amend and modify the definition of the Class and Subclass to create greater specificity, further divide into subclasses, or limit to particular issues as the case progresses.

90.     Excluded from the Class are Defendant, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partially owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

91.     The definition of the Class and Subclass are unambiguous, and Plaintiff is a member of the Class and Subclass she seeks to represent.

92.     While the exact number of class members is unknown to Plaintiff at this time, on information and belief, at the time of Plaintiff's enrollment, Defendant Concordia had at least 500 students enrolled in its ABSN program, including more than 150 students in its Portland, Oregon ABSN program.

93.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other class members paid full tuition to Concordia after bargaining for an educational experience that emphasized in-person, hands-on learning. Yet, Plaintiff and the class members either received no interactive in-person, hands-on experience, or less than they bargained for. Furthermore, Plaintiff and each of the class members paid Concordia fees that provided no cognizable benefit as a result of the fact that Plaintiff and the class members no longer receive access to, or received less access to, clinical education settings or on-campus student activities.

94.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

95.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole. Specifically, Defendant continued to collect and/or failed to refund tuition and fees from class members even though it is aware that the retention of such funds is unlawful and/or inequitable.

96.     Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual members thereof. Among the common questions of law and fact are the following:

    a.    Did Concordia engage in the conduct alleged?

    b.    Did Concordia breach identical contracts with Plaintiff and the class members?

    c.    Did Concordia fail to honor identical promises to Plaintiff and the class members?

    d.    Did Concordia retain funds that justice and equity demand be returned to Plaintiff and the class members?

    e.    Did Concordia and is Concordia continuing to publish misstatements and/or misrepresentations on its website and in its marketing and advertising?

    f.    Did Concordia and/or Orbis commit unfair, deceptive, and/or unconscionable acts or practices in its transactions with Plaintiff and the class members?

    g.    What is the nature and extent of damages and other remedies to which the conduct of Concordia entitles Plaintiff and the class members?

97.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impracticable. The prosecution of separate actions by individual class members would impose heavy burdens upon courts, class members, and Defendant, and would create the risk of inconsistent adjudications of questions of law and fact common to the Class. Defendant has acted on grounds generally applicable to the Class such that the final injunctive relief sought is appropriate respecting the Class as a whole. In addition, the allegations contain herein show

that common questions of law and fact predominate over any questions affecting individual class members and a class action is therefore superior to other available methods for fairly and efficiently adjudicating the controversy. A class action would achieve substantial economies of time, effort, and expense, and would assure uniformity as to persons similarly situated without sacrificing procedural fairness. Plaintiff and the proposed Class satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT
**(on behalf of Plaintiff and the Class)**

98.     All other paragraphs are fully re-alleged and incorporated herein.

99.     Plaintiff and class members entered into identical, binding contracts with Concordia. The terms of such contracts are found in the handbooks, syllabi, registration forms, course catalogues, and other materials provided to Plaintiff and class members prior to enrollment and re-enrollment in the ABSN program.

100.    Under their contracts with Concordia, Plaintiff and the class members paid Concordia tuition and fees for Concordia to provide specific onsite, in-person education through simulated and/or clinical settings.

101.    Plaintiff and the class members have fulfilled all obligations, having paid Concordia tuition and fees for at least one semester of the ABSN program.

102.    However, Concordia has breached such contracts, failed to provide the educational services in the format agreed to by the parties, and/or has not otherwise

performed as required by the contract between Plaintiff and the class members and Concordia.

103.    Plaintiff and other class members have suffered damages as a direct and proximate result of Concordia breaches of contract, in an amount to be determined at trial.

## COUNT II – UNJUST ENRICHMENT
### (on behalf of Plaintiff and the Class)

104.    All other paragraphs are fully re-alleged and incorporated herein, except for paragraphs 98-103. This claim is brought in the alternative to Plaintiff's claim for breach of contract.

105.    At all times relevant hereto, Plaintiff and the class members directly conferred non-gratuitous benefits on Concordia, *i.e.*, monetary payments for tuition and fees, including in part on a credit-hour-by-credit-hour basis, so that Plaintiff and the class members could avail themselves of in-person and hands-on educational training and campus facilities.

106.    Concordia knew of the benefits conferred on it by Plaintiff and the class members and accepted or retained the payments premised upon the existence of services it no longer provided or refused to provide. In effect, Concordia charged Plaintiff and the class members for certain benefits and then unilaterally provided benefits worth substantially less, but kept the difference in value.

107.    Concordia knows that it does not have any lawful right to retain such tuition and fees paid by Plaintiff and class members.

108.    Concordia's retention of tuition and fees is unjust under the circumstances of this case because the acceptance of such payments was premised upon the existence of services that Concordia did not provide, making it wholly inequitable for Concordia to improperly retain the benefits of Plaintiff's and the other class members' payments and entitling Plaintiff and the other class members who made such payment to full restitution, including interest, in an amount to be determined at trial.

109.    Allowing Concordia to retain the aforementioned payments violates fundamental principles of fairness and equity.

### COUNT III – PROMISSORY ESTOPPEL
### (on behalf of Plaintiff and the Class)

110.    All other paragraphs are fully re-alleged and incorporated herein, except for paragraphs 98-103. This claim is brought in the alternative to Plaintiff's claim for breach of contract.

111.    As detailed throughout this Complaint, Concordia made clear, unambiguous, and uniform promises to Plaintiff and the class members that it would provide onsite, in-person education and learning experiences through simulated and/or clinical settings.

112.     Concordia also promised that Plaintiff and the class members would have access to campus facilities, such as its simulation and skills labs.

113.    Concordia knew or should have reasonably expected Plaintiff and the class members would rely on these promises due to the emphasis Concordia placed on onsite and/or in person experiences in its handbooks, marketing, recruitment, and informational material (as detailed throughout this Complaint).

114.    Concordia broke its promises to Plaintiff and the class members when it discontinued or failed to provide in-person, hands-on learning experiences in simulated and/or clinical settings.

115.    Plaintiff and the class members relied on these promises to their detriment when they paid tuition and fees.

116.    Injustice can only be avoided by enforcement of Concordia's promises and/or payment in the form of restitution and/or damages in an amount to be determined at trial.

## COUNT IV – NEGLIGENT MISREPRESENTATION
### (on behalf of Plaintiff and the Class)

117.    All other paragraphs are fully re-alleged and incorporated herein.

118.    In the course of business, Concordia misrepresented that the Plaintiff and the class members would receive in-person clinicals, simulations, and skills labs as described herein. Concordia had a duty of care to disclose the altered curriculum rather than the misrepresented information.

119.    Concordia supplied Plaintiff and class members false and misleading information in the form of orientation materials, course schedules, handbooks, and internet advertising that a reasonable person would have used as guidance in evaluating the type of education they would receive in exchange for their tuition and fees.

120.    At the time Concordia made these misrepresentations, it should have known that these representations were false and/or misleading. Concordia failed to exercise reasonable care or competence in communicating the representations to Plaintiff and the Class members concerning in-person learning.

121.   Concordia negligently misrepresented and/or, at a minimum, negligently omitted material facts concerning in-person learning as described herein.

122.   The misrepresentations and omissions made by Concordia, upon which Plaintiff and class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and class members to enroll in Concordia or pay a premium price for their education.

123.   Plaintiff and class members maintained an asymmetrical bargaining power which weighed heavily in favor of Concordia, which maintained exclusive control over the actual education provided to Plaintiff and the class members. Moreover, upon information and belief, the ABSN program is designed and managed by Orbis Education, a large for-profit corporation.

124.   Plaintiff and class members would not have enrolled in Concordia or would have paid considerably less, if the true facts concerning in-person learning had been known.

125.   Concordia's actions have caused damage to Plaintiff and class members, who are entitled to damages and other legal and equitable relief as a result of Concordia's misrepresentations.

## COUNT V – RECKLESS MISREPRESENTATION
### (on behalf of Plaintiff and the Class)

126.   All other paragraphs are fully re-alleged and incorporated herein.

127.   Concordia represented that Plaintiff and the class members would receive in-person clinicals, simulations, and skills labs as described herein. These representations were made in the form of orientation materials, course schedules, handbooks, and internet

advertising that a reasonable person would have used as guidance in evaluating the type of education they would receive in exchange for their tuition and fees.

128.   Plaintiff and the class members relied on these representations when enrolling and re-enrolling in Concordia's ABSN program. However, these representations were false—Plaintiff and the class members did not receive the in-person simulations, skills labs, and clinicals that were promised.

129.   At the time Concordia made these representations, it was either conscious of its ignorance of the truth of these representations, or realized that the information on which it relied when making the representations was not adequate or dependable enough to support the representations to Plaintiff and the class members.

130.   The misrepresentations and omissions made by Concordia, upon which Plaintiff and class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and class members to enroll in Concordia or pay a premium price for their education.

131.   Plaintiff and class members maintained an asymmetrical bargaining power which weighed heavily in favor of Concordia, which maintained exclusive control over the actual education provided to Plaintiff and the class members. Moreover, upon information and belief, the ABSN program is designed and managed by Orbis Education, a large for-profit corporation.

132.   Plaintiff and class members would not have enrolled in Concordia or would have paid considerably less, if the true facts concerning in-person learning had been known.

133.    Concordia's reckless actions have caused damage to Plaintiff and class members, who are entitled to damages and other legal and equitable relief as a result of Concordia's misrepresentations.

**COUNT VI – Oregon Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. Ann. §646.605, et seq.**
**(on behalf of Plaintiff and the Subclass)**

134.    All other paragraphs are fully re-alleged and incorporated herein.

135.    The Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.* ("UTPA") prohibits unfair and deceptive acts and practices in commerce.

136.    Deceptive advertising and marketing, including the misrepresentation of facts and the omission of material facts, violates the UTPA's prohibition on unfair and deceptive acts and practices in commerce. Under the UTPA, a representation is a manifestation of an assertion by words or conduct, including a failure to disclose a fact. Actionable representations under the UTPA can be express or implied.

137.    Plaintiff and Defendant are persons within the meaning of Or. Rev. Stat. Ann. § 646.605(4).

138.    Or. Rev. Stat. Ann. § 646.608(1) states that it is unlawful to: Pass off goods or services as the goods or services of another; Cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; Represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have; Advertise goods or services with intent not to provide the

goods or services as advertised, or with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity; Promise to deliver goods or services within a certain period of time with intent not to deliver the goods or services as promised; or Engage in any other unfair or deceptive conduct in trade or commerce. *See* Or. Rev. Stat. Ann. § 646.608(1)(a), (c), (e), (i), (q), (u).

139. Defendant willfully engaged in the following unconscionable and deceptive acts and practices, aimed at the consumer public at large, which included representations and/or omissions that were likely to mislead a reasonable consumer acting reasonably under the circumstances:

a. passing off services as its own when they were really services provided by Orbis Education;

b. Causing a likelihood of confusion or of misunderstanding as to its affiliation, connection, or association with Orbis Education by omitting the fact that the services it advertises and passes off as its own are actually performed by Orbis Education;

c. Advertising and promising it would deliver specific onsite and in-person learning under the guidance of professionals without an intent to deliver the services as advertised and promised;

d.  failing to provide such services within the period of time advertised and promised;

e. Committing other unfair or deceptive acts regarding in-person, on-site learning under the guidance of professionals, as alleged herein.

41

140.    Plaintiff and class members relied on Defendant's misrepresentations and omissions when enrolling in Concordia's ABSN program.

141.    As a direct, proximate, and foreseeable consequence of Defendant's deceptive acts and practices, Plaintiff and the class members suffered an ascertainable loss of money and property including, without limitation, loss of educational opportunities, economic injuries, and other direct and consequential damages.

142.    Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees and costs, punitive damages, and appropriate equitable relief, as directed by the Court.

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for the following judgment,

a.    Certification of the action as a Class Action under Rule 23 of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

b.    Injunctive relief requiring Concordia to provide truthful information on its websites, which are published in part for current students' benefit and use;

c.    Injunctive relief requiring Concordia to provide truthful information in its student handbooks;

d.    Additional appropriate injunctive relief as permitted by law or equity, including an order enjoining Concordia from retaining and/or charging tuition and fees for services it does not provide or benefits that students do not receive;

e.   Awarding Plaintiff and class members damages in an amount to be determined at trial;

f.   Requiring Concordia to make full restitution to Plaintiff and the class members who paid tuition and fees for services they did not receive;

g.   Awarding pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law;

h.   The costs of bringing this suit, including reasonable attorneys' fees; and

i.   Awarding any such other and further legal and equitable relief as this Court may deem just and proper.

Respectfully submitted,

Dated: November 24, 2021          */s/ Bryan L. Bleichner*
Bryan L. Bleichner (MN 0326689)
Jeffrey D. Bores (MN 227699)
Christopher P. Renz (MN 0313415)
CHESTNUT CAMBRONNE PA
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
*bbleichner@chestnutcambronne.com*
*jbores@chestnutcambronne.com*
*crenz@chestnutcambronne.com*

Joseph M. Lyon (*pro hac vice* forthcoming)
THE LYON FIRM, LLC
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 721-1178
*jlyon@thelyonfirm.com*

43

Terence R. Coates (*pro hac vice* forthcoming)
Dylan J. Gould (*pro hac vice* forthcoming)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax:  (513) 665-0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

*Counsel for Plaintiff and the Putative Class*