**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Amelia Reynolds<br>*On behalf of herself and those similarly situated*,<br><br>     Plaintiff,<br><br>v.<br><br>Concordia University, St. Paul,<br><br>     Defendant. | Case No. 21-cv-2560 (ECT/DTS)<br><br>**ORDER REGARDING DISCOVERY** |

The parties filed a stipulation for an Order Regarding Discovery of Electronically Stored Information (Dkt. No. 46). Having reviewed the same, **IT IS HEREBY ORDERED:**

This Order Regarding Discovery or Electronically Stored Information (the "ESI Protocol") shall govern the preservation, search methods, form of disclosure, and discovery of electronically stored information (ESI) in the above-captioned matter (the "Action").

The ESI Protocol may be subject to amendment or supplementation based upon future stipulations of the parties or further developments, including, in particular, the parties' engagement of third-party document hosting vendors and any associated technical requirements in the form of the production. The ESI Protocol takes into consideration the concepts outlined in the "Discussion of Electronic Discovery at Rule 26(f) Conferences: A Guide for Practitioners" and Sedona Conference resources.

The ESI Protocol shall also govern the productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the

third party.  Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action.

## I. Production Format – Hard Copy

A. Hard copy documents may be produced as single-page, Group IV B/W TIFF images (300 DPI resolution) with coded data contained in a separate file. The parties will discuss reasonable requests for production of color or oversized documents on a document-by-document or category-by-category basis. The parties will scan any hard copy documents and produce them electronically with available metadata. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records. Parent-child relationships shall be preserved, and original document orientation shall be maintained.  Bates numbers, confidentiality designations (in accordance with the protective order governing the case), should be burned into the image in a manner that does not obstruct or cover any of the textual material. Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape) where reasonably possible.

## II. Production Format – Electronically Stored Information

A. "Electronically Stored Information" or "ESI" refers to computer-generated information or data of any kind, stored in or on any Storage Media.

B. "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the producing Party in the usual course of its business and in its regularly conducted activities.

C. "Metadata" means and refers to information embedded in electronic documents that is generally hidden from view in a printed copy of a document. It is generated when documents are created, modified, transmitted, deleted or otherwise

manipulated on a computer. Metadata may include the characteristics, origins, usage and/or validity of the electronic file, such information as the author of a document, the date or dates on which the document was revised, tracked revisions to the document, and comments inserted in the margins. It may also reflect information necessary to access, understand, search, and display the contents of documents created in spreadsheet, database, and similar applications.

  D. "Storage Media" means an object or device, real or virtualized, including but not limited to a disc, tape, computer, thumb drive or USB drive, mobile device, smartphone, iPad, Cloud (public, private or hybrid) or other device, or other similar means of communication, on which data is or was stored.

  E. ESI should be produced as single-page, Group IV, 300 DPI TIFF images, with the exception of audio, video, and spreadsheet files, including Power Points, Microsoft Excel, which should be produced in Native Format. Production shall be made subject to the following:

- TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line.

- Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC0000001). A single prefix with a fixed width should be used for each producing party, along with a fixed-width numerical portion. If a Bates number or set of Bates

numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

- PowerPoint documents should be produced in Native Format processed with hidden slides and all speaker notes unhidden and should be processed to show both the slide and the speaker's notes.

- Color originals may be produced in black and white TIFF format. The parties will discuss reasonable requests for production of color documents on a document-by-document or category-by-category basis.

- If delimited text files, and additional documents of another type cannot be reasonably converted to useful TIFF images, this ESI shall be produced as native files along with extracted text and metadata identified below.

- If a document is produced in Native Format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in Native Format should also be provided. Each Native Format file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

- The parent-child relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be

preserved. The child-document should be consecutively produced immediately after the parent-document. All parent and child documents shall be produced if any of the parent or child documents are relevant unless otherwise exempted in this Stipulation.

- Documents should be deduplicated at the family-group level provided that the producing party identifies the additional custodians in an Additional Custodian field. A party may also de-duplicate "near-duplicate" email threads as follows: in an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message and provided that the software used to identify these "near-duplicate" threads is able to identify any substantive differences to the thread such as changes in recipients (*e.g.*, side threads, subject line changes), selective deletion of previous thread content by sender, *etc.* Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate."

- Any Email thread must include all recipients of the email thread identified in the thread in the To, From, CC, or BCC and should be stated in standard internet form.

- The producing party shall provide optical character recognition ("OCR") text files for all documents originating as paper. Text files should be in Unicode [UTF-8] format. All references below to 'Unicode' are synonymous with UTF-8. To the extent that documents have been run

through OCR software, the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

- The parties will utilize logical unitization of documents such that distinct documents may not be merged into a single record, and single documents may not be split into multiple records (*i.e.*, paper documents should be logically unitized). For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container. The parties will undertake reasonable efforts to, or have their vendors, logically unitize documents in accordance with the requirements of this paragraph, but nothing in this paragraph shall require the parties to undertake efforts to unitize documents that would be unduly burdensome. The parties agree to meet and confer to address situations in which a party believes that documents have not been properly unitized.

- The requesting party may ask for certain other documents and/or databases initially produced in TIFF format to be produced in their native format in the event that the TIFF format is not reasonably usable. The

requesting party shall identify the documents by their Bates numbers and the documents should be produced in their unaltered native format, provided, however, that the producing party shall not be required, absent a court order, to produce any redacted files in native format.

- To the extent that a document contains tracked changes or comments, the document should be imaged showing tracked changes and comments.

- The producing party shall produce passwords for any password-protected files to the extent the passwords are reasonably available.

- If reasonably possible, embedded ESI documents (*e.g.* a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related back to the respective top level parent document (*e.g.*, standalone file, email message, *etc.*) via the BegAttach and EndAttach fields. Related documents will be produced within a continuous Bates range. Nothing in this paragraph will require a party to extract or produce information from an embedded or attached internet link.

- All ESI should be produced with a delimited, database load file that contains the following Metadata fields, to the extent those fields exist and can be reasonably captured at the time of collection If the producing party is unable to produce metadata for a particular field, it will provide an explanation of that inability if requested by the receiving party.
    - BegBates
    - EndBates

- BegAttach
- EndAttach
- Author
- To
- From
- CC
- BCC
- Document Extension
- Document Subject
- Date Sent
- Time Sent
- Date Modified
- Time Modified
- Date Created
- Time Created
- File Name
- File Type
- File Size
- Email Subject
- Hash Value
- Title
- Confidentiality Designation
- Custodian
- Date Received
- Folder
- File Name
- Page Count
- Attachment Count
- Redacted
- Importance
- Sensitivity
- Read Status
- Native File Link

**III.    Production of Database and Other Structured Data**

A.     If a database or other source of structured data contains responsive information, the parties should meet and confer to determine a mutually agreeable format for producing the database or other structured data. Before meeting and conferring, the producing party will provide the following information about the database or structured data to the receiving party to the extent reasonably available.

Database Name;

    Type of Database;

    Software Platform;

    Software Version;

    Business Purpose;

    Users;

    Size in Records;

    Size in Gigabytes (GB);

    A List of Standard Reports;

    Identity of the Database Owner or Administrator:

    Field List;

    Field Definitions (including field type, size, and use); and

    Field relationships to other tables within the database.

**IV.**  **Production of Audio and Video Recordings**

    A.  If audio and/or video recordings are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the audio and/or video recording. Before meeting and conferring, the producing party will provide the following information about the responsive audio and/or video recordings to the receiving party to the extent reasonably available.

    Date of the recording;

    Duration of the recording;

    Names of individuals who were recorded;

    Event being recorded;

    Whether the recording is digital or analog;

    Size in Megabytes (MB) of digital recordings;

9

>  Whether minutes for the event being recorded were prepared; and
>
>  Whether Certified Legal Transcription was prepared by a Certified Court Reporter.

**V.   Transcripts**

A.   If deposition or other transcripts are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the transcripts. Before meeting and conferring, the producing party will provide the following information about the responsive transcripts. To the extent that the information listed below does not exist, is not reasonably accessible or available, or would be unduly burdensome to obtain, nothing in this ESI Protocol shall require any party to extract, capture, collect or provide such information.

- Date of the deposition, trial, hearing or other event (each an "event");
- Duration of the event;
- Name of the individual(s) who was/were recorded;
- The forms in which the transcripts exist such as PDF, text file, livenote or etranscript format (.lef, .ptx, or .ptz); and
- List of exhibits associated with the transcript and/or event.

**VI.   Processing of Third-Party Documents**

A.   A party that issues a non-party subpoena shall include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.  The issuing party may request that the non-party simultaneously produce documents to the issuing party and all other parties. If the non-party produces documents only to the issuing party, to the extent practical given the data volume, productions by a non-party should be produced by the issuing party to all other parties within seven (7) calendar days.  Nothing in this ESI

Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or nonparties to object to a subpoena.

## VII. Preservation

A. Nothing in this Order precludes either party from raising issues of spoliation of evidence in the event it is discovered that relevant ESI was not properly preserved in conjunction with the party's discovery obligations under the Federal Rules of Civil Procedure. The circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible because the parties anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery. Moreover, the remote possibility of additional relevant information existing in non-reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review and production of ESI from sources that are not reasonably accessible. The parties have agreed that the following ESI is not reasonably accessible or not likely to contain additional relevant information:

- Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems;
- On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located;
- Data in metadata fields that are frequently updated automatically, such as last- opened dates;
- Server, system or network logs;
- Data stored on mobile devices and tablets, provided that a copy of all such electronic data is routinely saved elsewhere;
- Other forms of ESI whose preservation requires extraordinary affirmative measures that are not customarily utilized in the ordinary course of a business;
- Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics; and
- Data stored on photocopiers, scanners and fax machines.

**VIII.   Privilege and Privilege Logs**

If a party objects to producing a document or withholds production of a document on the basis of a privilege, the party will produce a Privilege Log. In the log, the objecting or withholding party's privilege claim will be described in such detail to enable the other party to understand the basis for the privilege and allow the Court to determine the legal sufficiency of the privilege claim.

A.   The following documents, however, need not be included on a privilege log:

- Communications between a party and its current counsel.
- Communications between a party and its counsel, including in-house counsel, on and after the filing of this lawsuit.
- Internal communications within a law firm on and after the filing of this lawsuit.
- Any communications from a party to any law firm retained by it, following the filing of this lawsuit.

B.   For documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, and not otherwise exempted under Section L or any Rules or Local Rules, the producing party shall prepare a privilege log and provide a copy of same, within thirty calendar days of the corresponding production, in compliance with FRCP 26(b)(5) containing, for each document claimed as privileged, the following information:

- BEGNO
- ENDNO
- ALL CUSTODIANS
- DATE
- AUTHOR
- TO
- CC
- BCC
- SUBJECT
- PRIVILEGE CLAIM ASSERTED (ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT)

C. If the Requesting Party requires further information for any withheld communication under Section M, it shall explain in writing the need for such information. Within five business days of such a request, the producing party must either (i) provide the requested information or (ii) deny the request. If a party denies a request for further information, the parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the parties must request a conference with the Court before any motions may be filed.

**IX. Miscellaneous Provisions**

A. Non-Waiver: Nothing in this ESI Protocol shall be construed to affect the relevance, or admissibility of discoverable information. Nothing in this ESI Protocol shall be interpreted to require production of Documents protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable protection or privilege.

B. Custodian or Originating Source: The custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard drive, *etc.*) should be produced in such a fashion as to identify the department, group, entity, or facility. A producing party shall use a uniform description of a particular custodian across productions.

C. Dates. All documents shall be processed so as to show the date and time in UTC or Eastern Standard Time.

D. The parties will meet and confer relating to the process of searching for documents responsive to discovery, including, specifically, whether the parties will utilize search terms or technology assisted review ("TAR"). The parties will further meet and confer and will identify and discuss the custodian and non-custodial sources that will be included in responding to specific discovery requests. The parties will identify any sources of information responsive to specific discovery requests that party contends is not reasonably accessible due to burden or cost.

E. All productions are subject to the Protective Order entered by the Court in this Action

F. The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties in compliance with D. Minn. LR 7.1(a).

G. The party producing the ESI will pay the costs of the search and production. If a party intends to advance cost shifting claims, whether during or upon conclusion of the litigation for the search or production, including any claims under Fed R. Civ. P 54 and 28 U.S.C. § 1920, the producing party must provide notice to the requesting party in advance of the search and production and include an estimate of

the associated costs. If proper notice is not provided, any cost shifting claims are waived.

      H.    All ESI produced is deemed an authentic document without any need to lay additional foundation, unless an explanation describing the lack of authenticity and a specific objection accompanies the production of the document. This provision does not waive any objection related to relevancy or admissibility on other evidentiary grounds.

Dated: August 9, 2022                                              s/David T. Schultz
                                                                               DAVID T. SCHULTZ
                                                                               U.S. Magistrate Judge