## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Amelia Reynolds,<br>*on behalf of herself and those*<br>*similarly situated,* | Civ. No. 21-2560 (JWB/DTS) |
| Plaintiff, | |
| v. | |
| Concordia University, St. Paul, | |
| Defendant. | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD TO PLAINTIFF

## I.  INTRODUCTION

For over two years, Class Counsel[1] have worked diligently on behalf of Plaintiff and the Class in this case against Defendant Concordia University, St. Paul ("Concordia" or "CSP"). In the successful end, Class Counsel reached a settlement with Concordia for a non-reversionary $800,000.00 common fund.  This represents an outstanding recovery for the Class.

From the inception of this case until March 1, 2024, Class Counsel have invested more than 743.8 hours pursuing the claims associated with ABSN program and the COVID-19 pandemic. Declaration of Bryan L. Bleichner in Support of Plaintiff's Motion

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as used in the Settlement Agreement. [*See* Dkt. No. 59, Ex. 1].

for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiff ("Bleichner Decl."), ¶ 21 (filed contemporaneously).  The docket in this matter is not long but it was thorough reflecting an efficient and targeted pre-suit investigation and review including the review of public marketing and program documents, the pleading of novel claims against Concordia, a coordinated and well-reasoned response to Concordia's motion to dismiss, the development of damages theories through expert consultation, the exchange of informal discovery and formal discovery and a hard-fought arms-length mediation with a skillful retired judge leading to the Settlement.

Accordingly, Class Counsel respectfully request a Fee Award of $266,666.67, which is one-third (1/3) of the $800,000.00 common fund.  Class Counsel have incurred a lodestar total of $601,568.60, equating to a negative multiplier of .44 from the inception of this case through March 2024. [Bleichner Decl., ¶ 21; Declaration of Terence R. Coates in Support of Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiff ("Coates Decl."), ¶¶ 5-6 (filed contemporaneously); Declaration of Joseph M. Lyon in Support of Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiff ("Lyon Decl."), ¶¶ 5-6 (filed contemporaneously)]. Class Counsel also seek reimbursement for the litigation expenses incurred in the amount of $9,450.35, as well as a $5,000.00 service award for Plaintiff, the court-appointed Class Representative. Bleichner Decl., ¶ 21. As discussed below, under either the percentage of the common fund/benefit approach or the lodestar approach, the attorneys' fees, reimbursement of litigation expenses, and service award should be approved as the requests are all well within the range of awards

2

made by judges of this District as well as the Eighth Circuit. This Court should grant Plaintiff's motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    History of the litigation

On November 24, 2021, Plaintiff and proposed Class Representative Amelia Reynolds filed a Complaint against Concordia alleging that Plaintiff and Class Members were financially damaged and did not receive the benefits of in-person instruction when Concordia switched to online courses in lieu of onsite courses for non-didactic instruction as a result of COVID-19. [Dkt. No. 1, Complaint.] Plaintiff asserted claims for: (1) breach of contract; (2) unjust enrichment; (3) promissory estoppel; (4) negligent misrepresentation; (5) reckless misrepresentation; and (6) violation of the Oregon Unlawful Trade Practices Act. [*Id.*]  On January 24, 2022, Concordia filed a Motion to Dismiss Plaintiff's Complaint. [Dkt. No. 20, Motion to Dismiss].

Following full briefing on the Motion to Dismiss, the Court issued an order granting in part and denying in part Concordia's Motion to Dismiss on May 3, 2022. [Dkt. No. 35]. The Court dismissed Plaintiff's claim for injunctive relief, negligent misrepresentation, and violation of Oregon's Uniform Trade Practices Act, but denied Defendant's motion in relation to the remaining causes of action. [*Id.*] The Parties then engaged in discovery and mediation, to explore an early resolution of the case.

### B.    Following Informal Discovery, Mediated Settlement Negotiations Resulted in a Settlement

Following the Court's ruling on the Motion to Dismiss, the Parties engaged in mediation under the guidance of retired state court Judge Thomas Fraser. Before the mediation, the Parties exchanged informal discovery. Judge Fraser required detailed mediation statements and conducted a mediation on June 24, 2022, via Zoom. The mediation was productive but did not result in a settlement in principle.

Through the informal and formal discovery processes, publicly-available documents, and evaluation of court decisions and settlements in other similar COVID-19 tuition reimbursement cases, Plaintiff was able to properly evaluate the liability and damages case on a class wide basis. Furthermore, Defendant provided access to informal and confirmatory discovery related to class size, enrollment per semester at issue in this case, and Defendant's potential insurance coverage for Plaintiff's claims. Plaintiff and Class Counsel believe the Settlement is fair, adequate, reasonable, and in the best interests of Class Members, taking into account the benefits provided to Class Members under the Settlement, the risks of continued litigation and possible trial and appeals, and the length of time and the costs necessary to proceed to trial. Using settlement of other cases and focusing on the facts at issue, the Parties negotiated the settlement that is the subject of this motion over the course of months.

The Parties worked together to come to an agreement on the Settlement Agreement, which was finalized in August 2023. [Dkt. No. 59, Ex. 1]. On August 24, 2023, Plaintiff moved for preliminary approval of the Settlement, and the Court granted the unopposed motion on December 2, 2022.  [Dkt. Nos. 56, 73].

C.      **The Settlement Agreement Provides Significant Benefits to the Class**

The Settlement resolves and releases all claims asserted by Plaintiff and the Class against Concordia.  The Settlement Agreement notes that Plaintiff and Class Counsel conducted an adequate investigation of law and fact to determine the Settlement was fair, reasonable, and adequate, taking into account:

> (1) the existence of complex and contested issues of law and fact; (2) the risks inherent in litigation; (3) the likelihood of future proceedings will be unduly protracted and expensive if the proceeding is not settled by voluntary agreement; (4) the magnitude of benefits derived from the contemplated settlement in light of both the maximum potential and likely range of recovery obtained through further litigation, and the expense thereof; as well as the potential of no recovery whatsoever; and (5) Plaintiff's determination that the settlement is fair, reasonable, adequate, and will substantially benefits Class Members.

[Dkt. No. 59, Ex. 1 ¶ 6].

> The Settlement defines the Class as:

> The individuals identified on the Concordia Settlement Class List who were enrolled as students in CSP's Accelerated Bachelor of Science in Nursing ("ABSN") program in Oregon who paid tuition and fees to Concordia during the Summer 2020, Fall 2020, Spring 2021, Summer 2021, or Fall 2021. Excluded from the Settlement Class are: (1) the Judge and court personnel overseeing this Litigation; (2) the Defendant, its subsidiaries, successors, predecessors, and any entity in which the Defendant has a controlling interest and its current or former officers, directors, and employees; (3) "teach-out students" who began the ABSN program by enrolling with Concordia University Portland ("CUP") but ultimately received instruction through CSP as a result of the "teach out agreement" between CUP and CSP, and (4) Settlement Class Members who submit a valid Request for Exclusion on or before the Opt-Out Deadline

[*Id.* ¶ 36].  Under the Settlement, Concordia will pay a non-reversionary common fund of $800,000.00, which includes the Fee Award, Administrative Expenses, Class Counsel's Litigation Expenses, and Service Award.  [*Id.* ¶¶ 39, 48, 56(i), 75].

The monetary relief available to the Class Members who submit a claim will be based on a pro rata distribution of the Settlement Fund, after payment of any Fee Award and Expenses, Notice and Administration Expenses, and a Service Award. Class Members who receive a Settlement Payment will receive payment for each semester in which they were enrolled and paid tuition or fees during the Summer 2020, Fall 2020, Spring 2021, Summer 2021, or Fall 2021 semesters. [*Id.* ¶ 56(ii)]. If it is economically feasible, the Settlement Administrator will conduct a second round of distribution of Settlement Payments to Class Members if a sufficient number of Class Members fail to deposit the payments received during the first round of distribution.  [*Id.* ¶ 56(iii)].

Concordia also agreed that upon expiration of any checks that have been mailed to Class Members but have not been cashed, 100% of the remaining unclaimed funds after the final round of pro rata distribution will be donated, subject to Court approval, to Oregon Center for Nursing subject to Court approval. [*Id.* ¶ 56(iv)].

In exchange for the consideration above, Plaintiff and Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Concordia from claims arising from ABSN program.  [*Id.* ¶¶ 57-58.]

## III.   AWARDING ATTORNEYS' FEES TO CLASS COUNSEL IS REASONABLE UNDER GOVERNING LAW

### A.   Applicable Legal Standards

Federal Rule of Civil Procedure 23(h) allows a district court supervising a class action to "award reasonable attorney's fees and nontaxable costs that are authorized by law." Fed. R. Civ. P. 23(h). The Court has discretion to determine an appropriate attorneys'

6

fee award in a class action. *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019); *In re Monosodium Glutamate Antitrust Litig.*, No. 00-md-1328 (PAM), 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003) ("*MSG*") (citing *Blum v. Stetson*, 465 U.S. 886, 896-97 (1984)).

As courts within this District have observed, "[t]he theory behind attorneys' fee awards in class actions is not merely to compensate counsel for their time, but to award counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action." *MSG*, 2003 WL 297276, at *1; s*ee also In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716460, at *4 (D. Minn. Feb. 27, 2013) ("[A] financial incentive is necessary to entice capable attorneys . . . to devote their time to complex, time-consuming cases for which they may never be paid. To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citations omitted).

In exercising their discretion, courts within the Eighth Circuit may base an award of attorneys' fees either under a percentage of the common benefit recovered or the lodestar method. *Rawa*, 934 F.3d at 870. "[T]he 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Johnson v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id.* at 244-45.

## B.     Efficiency in Case Prosecution

Efficiency in complex civil litigation has long been a focus of judges in this District

handling class action litigation:

> The first observation is a simple one and one in which litigants and their
> counsel in civil litigation, and especially in complex civil litigation, too often
> lose sight. The Federal Rules of Civil Procedure shall be construed and
> administered to ensure the *just, speedy and inexpensive determination* of
> every action. Under Rule 1, as officers of the court, attorneys share the
> responsibility with the court of ensuring that cases are resolved not only
> fairly, but without undue cost or delay.

> All counsel – both those representing plaintiffs and defendants – conducted
> this litigation in an exemplary manner and fulfilled their obligations under
> Rule 1. This is the type of complex litigation that easily could have dragged
> on for several more years. Instead, it had a relatively short stay of two and a
> half years on this court's docket because counsel litigated the case efficiently
> and inexpensively. The lodestar of plaintiffs' counsel could easily have been
> much higher had not counsel cooperated with one another through the
> litigation and settlement process. Instead, all plaintiffs' counsel presented a
> modest lodestar because they moved the case along efficiently to a just result
> in a remarkably short period of time.

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn.

2005) (emphasis in original) (citations omitted).[2] In awarding fees, courts within this

District have time and again struck the efficiency chord:

> There is no question of the quality of lead counsel.  Both they and their
> opposite numbers are exceptionally skilled. While hard-fought, the litigation
> was conducted cordially and efficiently.  It is evident that absent counsel's
> willingness to work efficiently together, this case could well have lasted
> many more months, if not years.

---

[2] Fed. R. Civ. P. 1 provides that the civil rules "should be construed, administered, and
employed by the court and the parties to secure the just, speedy, and inexpensive
determination of every action and proceeding."

*In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1105 (D. Minn. 2009). This theme of efficient case prosecution is a common thread running through other fee precedent in this District. *See*, *e.g.*, *Zurn Pex*, 2013 WL 716460, at *3 ("To a large degree, the settlement and resolution of the complex issues present in this MDL litigation are the result of the diligence and focus of class counsel."); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (noting that "Plaintiffs' counsel moved the case along expeditiously, and made every effort to limit duplicative efforts and to minimize the use of judicial resources in the management of the case" and "[c]ounsel exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the Class"). Indeed, Class Counsel litigated and settled this case in approximately thirteen months following their filing of the initial complaint on November 24, 2021, to the signed Settlement Agreement in August 2023, with a Settlement providing significant benefits to the Class.

The services provided by Class Counsel are found in detail in the Declaration of Bryan L. Bleichner ("Bleichner Decl."). The highlights are summarized below:

- The law firms of Chestnut Cambronne PA; Lyon Firm, LLC; and Markovits, Stock & DeMarco, LLC served as Class Counsel and actively participated in the litigation from the outset to ensure the matter was prosecuted as efficiently as possible. [Decl. ¶¶ 5].

- Intensive factual and legal research was undertaken to plead narrow and strong claims in the Complaint based on the chronology and mechanism of the events. [*Id.* ¶ 6].

- The Parties engaged in early informal discovery in conjunction with early mediation discussions in an effort to efficiently resolve the case. [*Id.* ¶¶ 10-13].

- Class Counsel provided mediation documents to Judge Fraser, and advocated zealously during the mediation as well as in the private negotiations after the mediation to reach the Settlement. [*Id.* ¶¶ 12-13]. The Settlement provides significant relief and benefit to the Class.

Class Counsel's focus and efficiency in achieving resolution bears favorably on the quality of services provided by Class Counsel and the efficient efforts should be rewarded.

## C.   The Fee Requested is Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has "recognized consistently that . . . a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Eighth Circuit has upheld the use of a percentage of the fund approach. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). "In the Eighth Circuit, use of a percentage method of awarding attorney's fees in a common-fund case is not only approved, but also well established." *Yarrington,* 697 F. Supp. 2d at 1061 (citations and internal quotation marks omitted). Under the percentage-of-the-benefit method, courts award attorneys' fees equal to a reasonable percentage of the fund obtained for the class. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). "The key issue is whether the desired percentage is reasonable." *Khoday v. Symantec Corp.*, No. 11-cv-180, 2016 WL 1637039, at *9 (D. Minn. Apr. 5, 2016) (citing *Petrovic,* 200 F.3d at 1157), *aff'd sub nom.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

The Eighth Circuit has recently reiterated that district courts have discretion to use either the lodestar or percentage-of-the-fund method in determining an appropriate recovery, "and the ultimate reasonableness of the award is evaluated by considering relevant

factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, *Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974)." *Rawa*, 934 F.3d at 870 (quoting *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018)). In several recent cases, this District has most often applied the following *Johnson* factors in determining a reasonable attorneys' fee award:

> (1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel were exposed, (3) the difficulty and novelty of the legal and factual issues in the case, including whether plaintiffs were assisted by a relevant governmental investigation, (4) the skill of the lawyers, both plaintiffs and defendants, (5) the time and labor involved, including the efficiency in handling the case, (6) the reaction of the class and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases.

*Xcel Energy*, 364 F. Supp. 2d at 993 ("[N]ot all of the individual *Johnson* factors will apply in every case, so the court as wide discretion as to which factors to apply and relative weight to assign to each."); *Yarrington*, 697 F. Supp. 2d at 1062.

Here, the total value of the monetary benefits secured by Class Counsel for the Class is $800,000.00. Class Counsel's attorneys' fee request of 1/3 the total value of the Settlement Fund is $266,666.67, a request fully supported by the *Johnson* factors. *Xcel Energy*, 364 F. Supp. 2d at 998 (collecting cases supporting that this District routinely approves fee awards of roughly 1/3 the common fund). This fee represents a negative multiplier of .44 multiplier on lodestar—meaning the requested fee is less than lodestar— further supporting its reasonableness.[3] Furthermore, Class Counsel will continue to expend

---

[3] Class Counsel's lodestar will continue to grow due to the final approval hearing and any issues that arise during the claims process.

significant time and lodestar prosecuting this case through final approval and settlement administration thereafter. The Court should therefore award the requested fee.

### 1.     The Benefit Conferred on the Class

The benefit conferred on the Class is afforded great weight in assessing the reasonableness of a request of attorneys' fee and expenses. *Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings*, No. 0:14-cv-786-ADM-TNL, 2017 WL 2588950, at *2 (D. Minn. June 14, 2017) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Here, Class Counsel's significant litigation efforts pushed this case toward an early, positive resolution that benefits a nationwide class. Through this Settlement, Class Counsel obtained $800,000.00 in monetary relief from Concordia.

The Settlement Fund is non-reversionary, meaning that after deducting the Fee Award and expenses, the Service Award, and Administration Expenses, the entirety of the remaining fund will be distributed to Class Members who submit Claim Forms. If it is economically feasible, the Settlement Administrator will conduct a second round of distribution of Settlement Payments to Class Members if a sufficient number of Class Members fail to deposit the payments received during the first round of distribution. Upon expiration of any checks that have been mailed to Class Members but have not been cashed, 100% of the remaining unclaimed funds after the final round of pro rata distribution will be donated, subject to Court approval, to Oregon Center for Nursing subject to Court approval.

Through Class Counsel's vigorous litigation of the claims against Concordia and extensive settlement negotiations, Class Counsel achieved significant relief for Class

Members.  The substantial benefits to thousands of Class Members supports the requested Fee Award.

### 2.        The Risks to which Class Counsel were Exposed

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorneys' fees." *Xcel Energy*, 364 F. Supp. 2d at 994 (citation omitted). Risks "must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day." *Id.* (citation omitted). From commencement of this litigation through its eventual Settlement, Class Counsel faced numerous risks.

In agreeing to the Settlement, Class Counsel carefully considered a range of additional risks, including:

> (1) numerous merits issues remained uncertain; (2) the challenges associated with proving damages on a class-wide basis; (3) further developments in the law or the factual record of the case that could undermine Plaintiff's claims; (5) the risk that a jury might award lower damages than what is provided by the Settlement Agreement or no damages at all; (6) the risk both sides faced that a jury could react unfavorably to the evidence presented; and (7) the uncertainties, risks, expense, and significant delays associated with any appeal that would inevitably be pursued following trial and entry of final judgment.

[Decl. ¶ 17].

Such risks in complex class action litigation are very real. *See*, *e.g.*, *Xcel Energy*, 364 F. Supp. 2d at 994 (stating that "[t]he risk of no recovery in complex cases of this sort is not merely hypothetical" and that "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and

advanced costs yet have lost the case despite their advocacy"). As one court aptly remarked, "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

Despite these risks, Class Counsel undertook this litigation on a wholly contingent basis at a time that the law relating to the pandemic is still a developing area of law. In sum, the contingent nature of the case and the substantial risks involved in this complex litigation strongly support Class Counsel's fee request. *See Blum*, 465 U.S. at 902 (Brennan, J., concurring) ("[T]he risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee."); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1083 (D. Minn. 2009) ("In the Eighth Circuit, courts must take 'into account any contingency factor' where plaintiffs' counsel assumes a 'high risk of loss.' Plaintiffs' counsel assumed the risk this case would 'produce no fee,' and courts see fit to reward such gambles.") (citations omitted).

### 3.   The Difficulty and Novelty of the Legal and Factual Issues

Courts also consider the difficulty and novelty of the legal and factual issues. *See Target Corp.*, 892 F.3d at 977 ("[T]he award was justified by the time and labor required, the difficulty of the matter, the skills necessary to prevail (or to reach the current settlement agreement), and the length of the representation."). This case is no exception. In fact, typical class action complexity is amplified by the nature of the case. Plaintiff brought a difficult COVID-19 tuition reimbursement case that is unique for pandemic reimbursement

cases because it includes promises from Defendant and in person clinicals were guaranteed to ABSN students, but yet were not provided during the pandemic.

Additionally, the substantial benefits achieved in the Settlement are attributable solely to the efforts of Class Counsel, and the complexity of the factual and legal issues presented by this litigation supports Class Counsel's request for attorneys' fees. *See In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 173 (3d Cir. 2006) (absence of assistance from any government group supported district court's conclusion that the fee award to class counsel was fair and reasonable); *Dryer v. Nat'l Football League*, No. 09-2182 (PAM/AJB), 2013 WL 5888231, at *3 (D. Minn. Nov. 1, 2013) (approving settlement where "[t]here is no doubt that further litigation in this matter would be both complex and extraordinarily expensive").

### 4.   The Skill of Class Counsel

The skill of the attorneys litigating the case is another factor courts evaluate in determining an appropriate attorneys' fee. *See MSG*, 2003 WL 297276, at *2 (awarding attorneys' fees where "[t]he attorneys prosecuted [the] case very skillfully, often under difficult circumstances"). Class Counsel brought the highest quality skills and efficiency to this litigation. Each firm and attorney has significant complex and class action litigation experience, both in this District and nationally. Class Counsel's experience in prosecuting class action cases have proven to be critical to the efficient prosecution and ultimate resolution of this case.

Despite the legal and factual hurdles, Class Counsel were able to obtain a settlement affording class-wide relief. *See Xcel Energy,* 364 F. Supp. 3d at 995-96 ("Thus, the effort

of counsel in efficiently bringing this case to fair, reasonable and adequate resolution is the best indicator of the experience and ability of the attorneys involved, and this factor supports the court's award . . . ."); *see also Jenkins ex rel. Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997) ("The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole."); *Pentel v. Shepard*, No. 18-CV-1447 (NEB/TNL), 2019 WL 6975448, at *2 (D. Minn. Dec. 20, 2019) (same); *Roth v. Life Time Fitness, Inc.*, Civ. No. 16-2476 (JRT), 2019 WL 3283172, at *2 (D. Minn. July 22, 2019) (same). This factor further supports Class Counsel's request for attorneys' fees.

### 5.     The Time and Labor Involved, Including the Efficiency in Handling the Case

Class Counsel should be rewarded for moving the litigation along with diligence and extraordinary efficiency.  As previously discussed, this case was resolved after a remarkably short period of active litigation, providing a significant Settlement quickly after the pandemic. In awarding attorneys' fees, courts have consistently recognized and rewarded class counsel for moving the litigation to conclusion with diligence and efficiency.  *See Yarrington*, 697 F. Supp. 2d at 1063. As this District previously reasoned when granting a fee request:

> [P]laintiffs' counsel presented a reasonable lodestar in a case that was not yet ancient, but easily could have become so.  But for the cooperation and efficiency of counsel, the lodestar plaintiffs' counsel would have been substantially more and would have required this court to devote significant judicial resources to its management of the case.  Instead, counsel moved the case along expeditiously ….

*Xcel Energy*, 364 F. Supp. 2d at 996. This factor, like the others, weighs in favor of approving Class Counsel's fee request.

### 6.     The Reaction of the Class

A favorable reaction from the Class also supports the reasonableness of a fee request. *See, e.g., Beaver Cnty. Emps. Ret. Fund*, 2017 WL 2588950, at *3 (noting that the lack of a single class member objection is "strong evidence that the requested amount of fees and expenses is reasonable"); *Yarrington*, 697 F. Supp. 2d at 1064 (concluding "the Settlement Class strongly supports Settlement Class Counsel's request for attorneys' fees of 33% of the Settlement Fund, based on the fact that only one untimely objection was made"); *Xcel Energy*, 364 F. Supp. 2d at 998 (noting notices were mailed to over 265,000 potential class members and concluding that "careful consideration of the merits of the seven [fee] objections and the minuscule number of total objections received in light of the size of the class" supports the fee award).

Notice to the Class has been provided in a manner that complies with this Court's preliminary approval order. [Dtk. No. 73]. The date for Class Members to file objections to the Settlement or request for exclusions from the Class is April 1, 2024. Following completion of notice to the Class pursuant to the Notice Plan approved by the Court in its preliminary approval order, to date no Class Member has opted out, and no Class Member has objected to the fairness, reasonableness, or adequacy of the settlement or award of

attorneys' fees, expense reimbursement, or service award to the Class Representative.[4] [*Id.*] The favorable reaction of the class supports the reasonableness of Class Counsel's fee request.

### 7.   The Comparison Between the Requested Attorneys' Fee Percentage and Percentages Awarded in Similar Cases

The requested attorney fee is within the range of fees previously approved by courts in similar cases.  Class Counsel's request for fees totaling 1/3 of the common fund, in addition to expense reimbursement, falls squarely within the range of percentages deemed reasonable in similar class cases.

Courts in the Eighth Circuit and this District "have frequently awarded attorney fees between [25%] and [36%] of a common fund in other class actions." *Xcel Energy*, 364 F. Supp. 2d at 998 (collecting cases); *see also Rawa*, 934 F.3d at 870 (noting that fees in the Eighth Circuit have ranged up to 36% in class actions); *Khoday*, 2016 WL 1637039, at *9 (awarding a fee award of 33.33% for a total fee award of $20 million from a $60 million common fund); *In re US Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (36% of $3.5 million settlement fund awarded); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (35.5% of the $15 million settlement fund was "within the range established by other cases"); *Yarrington*, 697 F. Supp. 2d at 1064-65 (33% of $16.5 million common fund was "certainly within the range

---

[4] Class Counsel will provide the Court with updated information on any objections and requests for exclusion deadline when they file pleadings regarding the motion for final approval of the Settlement by May 1, 2024.

established by other cases in this District"). This factor, too, supports Class Counsel's request.

In conclusion, all relevant *Johnson* factors strongly support the requested attorneys' fees. Under the percentage-of-the-benefit method, the Court should award the requested attorneys' fee of one-third (1/3) the common fund.

### D.     <u>The Fee Requested is Reasonable Under the Lodestar Method</u>

The requested attorneys' fees are also reasonable under the lodestar method. The lodestar approach may be used as an independent basis for a fee award, *see Zurn Pex*, 2013 WL 716460, at *3-4; as a cross-check in evaluating a fee request under the common fund approach, *see Petrovic*, 200 F.3d at 1157; *Xcel Energy*, 364 F. Supp. 2d at 999; or as a side-by-side analysis alongside the common fund approach, *see MSG*, 2003 WL 297276, at *2-3. Under the lodestar approach, district courts within this Circuit apply four factors in determining whether requested attorneys' fees are reasonable: "(1) the number of hours counsel expended; (2) counsel's 'reasonable hourly rate'; (3) the contingent nature of success, and (4) the quality of the attorneys' work." *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d at 1106 (citation omitted); *see also In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (noting the lodestar method multiplies the hours expended by a reasonable hourly rate and any adjustment "to reflect the individualized characteristics of a given action") (citation omitted). Application of these factors is straightforward and supports the reasonableness of Class Counsel's requested fee given the substantial time and resources Class Counsel devoted to litigating

this case. (*See*, *supra* § II.B (describing significant efforts of counsel in securing an efficient resolution of this matter)).

Courts recognize that "[i]n cases where fees are calculated using the lodestar method, counsel may be entitled to a multiplier to reward them for taking on risk and high-quality work." *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d at 1106 (using lodestar cross-check and finding appropriate a multiplier of nearly 6.5); *see, e.g., Rawa*, 934 F.3d at 870 (5.3 multiplier was "not unreasonable in light of the results obtained"); *MSG*, 2003 WL 297276, at *3 ("a multiplier of slightly less than 2" is "within the range of multipliers that courts typically use"); *Yarrington*, 697 F. Supp. 2d at 1067 (2.26 multiplier was "modest" and reasonable "given the risk of continued litigation, the high-quality work performed, and the substantial benefit to the Class"); *Dworsky v. Bank Shares Inc.*, No. 3-93-13, 1993 WL 331012, at *2 (D. Minn. May 3, 1993) (approving 2.75 multiplier); *In re St. Paul Travelers Sec. Litig.*, Civ. No. 04-3801 JRT-FLN, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (approving 3.9 multiplier); *Xcel Energy*, 364 F. Supp. 2d at 999 (approving 4.7 multiplier).

Here, in addition to accounting for the requested expenses of $9,450.35 and $5,000.00 for a service award, Class Counsel's fee request amounts to a request in attorneys' fees of $266,666.67—a *negative* multiplier of .44. Courts note that a negative multiplier supports the reasonableness of the fee request. *White v. Stark Cty, Veterans Service Comm'rs*, No. 5:22-cv-1493, 2023 WK 713799, at *3 (S.D. Ohio Oct. 30, 2023) (noting that "a negative multiplier supports the reasonableness of the fees."); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275, at *10 (S.D. Fla. July 8, 2023) (same); *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813, 2023 WL 3688452, at * 14 (N.D. Cal.

May 25, 2023) (same). This negative multiplier will continue to grow as time spent implementing the settlement in 2024 is incurred.

Rates for Class Counsel ranged from $430/hour (Minnesota-based associate attorney) to $1,050/hour (Minnesota-based partner). [Bleichner Decl. ¶ 22; Coates Decl., ¶ 5; Lyon Decl., ¶ 5.] These rates are consistent with the rates typically approved in complex litigation in this District and within the Eighth Circuit. *See, e.g.*, *Fath v. Am. Honda Motor Co.*, No. 0:18-cv-01549-NEB-LIB, Dkt. 148 at 9 (D. Minn. Sept. 11, 2020) (approving in a class action "[h]ourly rates for the attorneys and paralegals involved ranted from $300 to $950 and $150 to $203, respectively"); *Klug v. Watts Regulator Co.*, No. 8:15CV61, 2017 WL 1373857, at *2 (D. Neb. Apr. 13, 2017) (approving hourly rates of $900); *Austin v. Metro. Council*, No. 11-cv-03621-DWF-SER, slip op. ¶ 57 (D. Minn. Mar. 27, 2012) (ECF No. 27) (noting that attorney rate of $500 per hour was "at the lower end of complex class action rates approved in this District"); *Xcel Energy*, 364 F. Supp. 2d at 989-90, 1004 (implicitly approving attorney rates ranging from $225-$650 in 2005).

The third and fourth lodestar factors—"the contingent nature of the success" and "the quality of the attorneys' work"—discussed more fully above, further support Class Counsel's attorneys' fee request under a lodestar analysis.

In sum, the requested attorneys' fee is fair and reasonable under the lodestar method and should be awarded. Therefore, under either the percentage-of-the-common benefit or lodestar methods, the Court should approve the requested attorneys' fee as fair and reasonable.

**E.**   **The Expenses Incurred in this Litigation are Reasonable and Should Be Reimbursed.**

Class Counsel respectfully request that the Court reimburse expenses of $9,450.35 representing Class Counsel's out-of-pocket expenses from inception through February 2024.  [Bleichner Decl. ¶ 21].

"The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation . . . ."  *Zilhaver*, 646 F. Supp. 2d at 1084-85 (citation omitted).  Courts routinely approve expenses incurred in the prosecution of complex cases.  *See*, *e.g.*, *Zurn Pex*, 2013 WL 716460, at *5 (awarding costs and expenses "related and necessary to the prosecution of this type of litigation"); *Yarrington*, 697 F. Supp. 2d at 1067-68 (awarding, *inter alia*, filing fees, expenses associated with research, preparation, filing and responding to pleadings, costs associated with copying, uploading and analyzing documents, fees and expenses for experts and mediation fees); *Zilhaver*, 646 F. Supp. 2d at 1085 (awarding "reasonable and necessary" costs and expenses).

The expenses incurred in this litigation were necessary for its efficient but effective prosecution. All expenses have been carefully scrutinized to ensure that they were reasonable and necessarily incurred to benefit the Class. [Bleichner Decl. ¶ 24]. Therefore,

Plaintiff and Class Counsel respectfully request that the Court order the reimbursement of expenses totaling $9,450.35 from the Settlement Fund.

**F.     Awarding a $5,000 Service Award to the Class Representative is Reasonable and Appropriate given Her Service to the Settlement Class**

The district court has discretion to award service awards. *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002). Class Counsel have requested that the Court award $5,000.00 to Plaintiff, who was appointed Class Representative and represented other members of the Class in this litigation.

Courts routinely approve such service awards to recognize individuals' service to the class and to reward them for contributing to the enforcement of laws through the class action mechanism. *See*, *e.g.*, *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n.7 (2018) (a "class representative may receive a share of the class recovery above and beyond her individual claim"); *Caligiuri*, 855 F.3d at 867 (service awards to named plaintiffs "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits") (quoting *Yarrington*, 697 F. Supp. 2d at 1068). Such awards often exceed the one requested here. *See, e.g., Garcia v. Target Corp.*, No. 16-CV-2574-MJD-BRT, 2020 WL 416402, at *2 (D. Minn. Jan. 27, 2020) (approving $10,000 service award as "reasonable in light of the services performed . . . including taking on the risks of litigation, helping to achieve the compensation being made available to the Settlement class, and providing discovery"); *Bhatia v. 3M Co.*, No. 16-1340 (DWF/DTS), 2019 WL 4298061, at *3 (D. Minn. Sept. 11, 2019) (awarding $25,000 service awards to two plaintiffs and $10,000 each to sixteen other class representatives); *In re Target Corp.*

23

*Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (PAM), 2016 WL 2757692, at *2 (D. Minn. May 12, 2016) (awarding $20,000 to each of the five financial institution class representatives).

In this case, Ms. Reynolds, as Class Representative, stepped up to lead this litigation on behalf of all Class Members nationally and to provide valuable services for the benefit of the Class. She also worked extensively with Class Counsel to respond to numerous inquiries regarding her individual facts and circumstances as the litigation proceeded. Ms. Reynolds also provided extensive information in response to information mediation discovery. She actively monitored the litigation through continuous communication with Class Counsel and was available for mediation and subsequent settlement discussions. [Bleichner Decl., ¶ 26; Declaration of Amelia Reynolds in Support of Final Approval of Class Action Settlement, Attorneys' Fees, Expenses, and Class Representative Service Award, ¶¶ 4-5 (filed contemporaneously)].

Because Ms. Reynolds devoted time and resources in service to the class, a service award in the amount of $5,000.00 to recognize the time, expense, and valuable contributions to this litigation should be awarded as fair and reasonable.

## IV.   **CONCLUSION**

Class Counsel, on behalf of Plaintiff and the Class, respectfully request that the Court award (1) reasonable attorneys' fees in the amount of $266,666.67; (2) reimbursement of expenses in the amount of $9,450.35; and (3) a service award to the Class Representative of $5,000.00. The requests are fair and reasonable under all applicable law.

Respectfully Submitted,

Dated: March 1, 2024

*/s/ Bryan L. Bleichner*
Bryan L. Bleichner (MN 0326689)
Jeffrey D. Bores (MN 227699)
Christopher P. Renz (MN 0313415)
CHESTNUT CAMBRONNE PA
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
*bbleichner@chesnutcambronne.com*
*jbores@chesnutcambronne.com*
*crenz@chesnutcambronne.com*

Joseph M. Lyon (pro hac vice)
THE LYON FIRM
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
*jlyon@thelyonfirm.com*

Terence R. Coates (*pro hac vice*)
W.B. Markovits (*pro hace vice*)
Dylan J. Gould (*pro hac vice*)
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
*tcoates@msdlegal.com*
*bmarkovits@msdlegal.com*
*dgould@msdlegal.com*

**Counsel for Plaintiff and the Class**